# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 14, 2012

Lyle W. Cayce
Clerk

No. 12-50131

LEAGUE OF UNITED LATIN AMERICAN CITIZENS, DISTRICT 19,

Plaintiff–Appellee

v.

CITY OF BOERNE; PATRICK R. HEATH, Mayor; R.L. BIEN, all in their official capacities as members of the City Council for the City of Boerne, Kendall County, Texas; DONALD L. GOURLEY, all in their official capacities as members of the City Council for the City of Boerne, Kendall County, Texas; ANN REISSIG, all in their official capacities as members of the City of Boerne, Kendall County, Texas; BEN STAFFORD, all in their official capacities as members of the City of Council for the City of Boerne, Kendall County, Texas; RANDY BEDWELL, all in their official capacities as members of the City Council for the City of Boerne, Kendall County, Texas,

Defendants–Appellees

v.

MICHAEL R. MORTON,

Intervenor–Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

KING, Circuit Judge:

No. 12-50131

This appeal requires us to decide whether the district court properly granted a joint motion by the City of Boerne, Texas, and the League of United Latin American Citizens, District 19, to modify temporarily a consent decree. Because we conclude that the district court erred in approving the temporary modification without following the procedures mandated by an earlier panel, we vacate the district court's order and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1995, the City of Boerne, Texas, (the "City") adopted a Home Rule Charter (the "City Charter"), which provides, *inter alia*, for a City Council of five members to be elected on an at-large, numbered-post basis. Under the City Charter, elections are to be held once per year for two-year terms, with three council members to be elected in one year and two council members plus the mayor to be elected the next year. *See* City Charter §§ 3.02, 4.05(B).

Soon after the City Charter was adopted, the League of United Latin American Citizens, District 19 ("LULAC"), filed suit against the City alleging that the voting method adopted by the City Charter diluted minority voting strength, in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973. The City and LULAC settled in December 1996, and the district court entered a consent decree in accordance with the parties' settlement (the "Consent Decree"). Among other things, the Consent Decree provided that City Council members would be elected on an at-large basis using cumulative voting, instead of a numbered-post system, and that the City would seek preclearance of that system from the Department of Justice ("DOJ") under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. Subsequently, preclearance was obtained. The City Charter, however, was not amended, and therefore continued to provide for at-large, numbered-post voting.

For several years, the City held elections in accordance with the Consent Decree. One Hispanic member was elected to the City Council in 1997. She was

2

No. 12-50131

reelected unopposed in 1999 and 2001. In 2003, the Hispanic Council member faced an opposing candidate for the first time and was defeated. No other Hispanic candidate has run for City Council since that time.

On December 2, 2009, the City Council held a special meeting to discuss moving from at-large elections to single-member district elections. Michael R. Morton ("Morton"), Intervenor–Appellant, opposed the change. The City Council voted to file a joint motion with LULAC, asking the district court to enter a modified Consent Decree providing for single-member district voting. The Council also passed an ordinance establishing five single-member districts and delineating their boundaries. Because the issue was not submitted to the voters, as is required to amend the City Charter, the City Charter continued to provide for at-large, numbered-post voting.

LULAC and the City subsequently sought to modify the Consent Decree to provide for single-member district voting, stating that the "cumulative voting system has failed to produce the results desired by either LULAC or the City," and the modification was sought "in hopes of producing the desired remedy with respect to minority candidate and voter participation and voting strength." The City and LULAC did not provide any supporting evidence. On December 11, 2009, the district court approved the agreement (the "Modified Consent Decree"). The order entering the Modified Consent Decree did not provide reasons for the decision or include findings of fact or conclusions of law. Instead, the court directed LULAC and the City to present a joint motion to dismiss the suit when implementation of the single-member district system was complete.

On January 6, 2010, Morton filed a motion to intervene in the lawsuit, contending that the Modified Consent Decree deprived him of his right under the City Charter to vote for all of the City Council members through an at-large election. The district court denied the motion, concluding that Morton lacked standing. On that same day, the City submitted its single-member district plan

No. 12-50131

to the DOJ for preclearance, which the DOJ subsequently granted. On the City and LULAC's joint motion, the district court dismissed the suit on April 19, 2010. Morton timely appealed the denial of his motion to intervene and the dismissal of the suit. Meanwhile, the 2010 and 2011 City Council elections proceeded under the single-member district plan established in the Modified Consent Decree.

On appeal, a panel of this court reversed the district court's denial of Morton's motion to intervene, vacated the court's order approving the Modified Consent Decree, and remanded for further proceedings. *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 440 (5th Cir. 2011) ("*LULAC I*"). The panel held that Morton had standing and the right to intervene. *Id.* at 428-35.[1] The panel also concluded that the district court had the power to modify the Consent Decree, but it abused its discretion in doing so, because the record "provided an insufficient basis for the district court to determine that modification was warranted" pursuant to the two-factor test for modification of consent decrees established in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). *Id.* at 437-38. Although the decision was rendered on September 28, 2011, the mandate did not issue until December 29, 2011.

When the case returned to the district court in January 2012, the City and LULAC filed a motion seeking modification of the Consent Decree to allow for single-member district voting in the upcoming May 12, 2012 City Council election.  The City and LULAC sought only a temporary modification because they concluded that it would not be possible to comply fully with the *LULAC I* mandate before the election.  On February 3, 2012, the court granted the motion

---

[1] The panel recognized that Morton's claim arose under state law. It stated, "Morton does not claim to have suffered any violation of a voting right under the U.S. Constitution or a federal statute such as the Voting Rights Act. Rather, his claim, which is sufficient to show an injury in fact for Article III standing purposes, is that he has a voting right under the city charter and this right has been abridged by the modified consent decree." 659 F.3d at 428 n.4.

4

No. 12-50131

for temporary modification and ordered that single-member districts be used for the May election (the "Order"). Arguing that the Order was contrary to *LULAC I*, Morton first sought a writ of mandamus,[2] and subsequently filed a notice of appeal, along with an emergency motion to expedite the appeal and stay the Order. We expedited the appeal, and now vacate the Order.

## II. STANDARD OF REVIEW

Although we normally apply an abuse of discretion standard to a district court's modification of a consent decree, see *Ruiz v. Lynaugh*, 811 F.2d 856, 861 (5th Cir. 1987), "we review de novo whether the trial court faithfully and accurately applied our instructions on remand." *Sobley v. S. Natural Gas Co.*, 302 F.3d 325, 332 (5th Cir. 2002).

## III. DISCUSSION

*1.     The District Court Failed to Comply with* LULAC I

On appeal, Morton contends that the district court failed to comply with the mandate of *LULAC I*, as the Order approves modification of the Consent Decree without the required evidentiary showing. We agree.

The *LULAC I* panel discussed in detail the evidence and procedures required before the district court could authorize modification of the Consent Decree. While advocating a "flexible approach," the panel relied upon the test for modification of consent decrees developed by the Supreme Court in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992). The panel explained:

> First, the party seeking modification must show that "a significant change either in factual conditions or in law" that "make compliance with the decree substantially more onerous [or] . . . unworkable because of unforeseen obstacles[,] . . . or when enforcement of the decree without modification would be detrimental to the public interest." Second, the court must then "consider whether the

---

[2] Mandamus relief was denied by a panel of this court, which held that the temporary modification was a type of temporary injunction, appealable pursuant to 28 U.S.C. § 1292(a)(1). *LULAC v. City of Boerne*, No. 12-50111, slip op. at 2-3.

proposed modification is suitably tailored to the changed circumstance."

*LULAC I*, 659 F.3d at 437 (quoting *Rufo*, 502 U.S. at 383-84).

The *LULAC I* panel concluded that the district court erred in granting the modification request without first requiring the parties to satisfy the *Rufo* test. *Id.* at 438-39. The panel explained that the "paucity of the record . . . provided an insufficient basis for the district court to determine that modification was warranted." *Id.* at 438. Recognizing that the Consent Decree was intended to alleviate vote dilution, the panel concluded that "LULAC and the city have not shown that the original consent decree had failed to achieve its intended purpose or that there has been any other significant change in circumstance." *Id.* at 439. The panel found that the evidence presented to the district court was insufficient to demonstrate satisfaction of the first step of *Rufo*, because the parties failed to "include additional facts in their joint motion to modify the consent decree, to file a summary of facts relied upon in the motion, and to file supporting affidavits and other pertinent documents." *Id.*[3] Furthermore, the district court could have "request[ed] further submissions or . . . schedule[d] a conference or hearing on the matters," but it did not do so. *Id.* The panel therefore vacated the district court's order approving modification of the Consent Decree, and reversed its dismissal of the action. The panel instructed that, on remand, "the district court should permit supplemental filings and conduct proceedings, as necessary, to develop a sufficient record in order to decide whether, consistent with this opinion, modification of the consent decree is appropriate." *Id.* at 439-40.

It is well established that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Penn. R.R. Co.*, 334 U.S. 304, 306 (1948). The mandate rule requires that a "district court follow

---

[3] *LULAC I* did not reach the second step of the *Rufo* analysis. 659 F.3d at 439.

both the letter and spirit of the mandate by taking into account the appeals court's opinion and circumstances it embraces." *United States v. Carales-Villalta*, 617 F.3d 342, 344 (5th Cir. 2010) (citation and internal quotation marks omitted). The district court's proceedings upon remand, however, bore little resemblance to those mandated by *LULAC I.* The district court did not, for example, permit the parties to conduct discovery, or hold an evidentiary hearing to receive competing expert and lay testimony, or even offer Morton a substantial opportunity to rebut the evidence that the City and LULAC presented.[4] The court determined instead that it could order a temporary modification of the Consent Decree if the City and LULAC could demonstrate a likelihood of success under the *Rufo* standard. Basing its decision primarily upon a single affidavit and an otherwise underdeveloped record, the district court found that the parties satisfied this standard. By approving a modification of the Consent Decree without holding a hearing and demanding a more developed factual record, the district court failed to follow the "letter and spirit" of the *LULAC I* mandate. *See Carales-Villalta*, 617 F.3d at 344.

Nor did the district court have the authority to approve a temporary modification of the Consent Decree notwithstanding *LULAC I.* The court believed it could do so because of the impending May 2012 election. On appeal, the City and LULAC contend that the district court merely exercised its "well-recognized equitable power to grant interim relief in the context of Voting Rights Act challenges to election changes." Although it is true that district courts generally have broad authority to order interim equitable relief in voting rights

---

[4] Before the district court, the City and LULAC submitted one affidavit from the Administrative Services Director and Deputy City Secretary Linda Zartler, who attested to voter confusion in at-large elections. They also submitted election results from 1996 to 2011, minutes from various City Council meetings in which the modification was discussed, correspondence with the DOJ regarding preclearance of the single-member district system, and various newspaper articles on the proposed modification. Morton submitted no evidence.

cases,[5] this authority is constrained when acting pursuant to an appellate court's mandate. Indeed, the City and LULAC have not provided any authority that would permit the district court to approve a temporary modification of the Consent Decree while operating under the *LULAC I* mandate. Nor have we found any such cases. Whatever authority the district court may have had to order an interim or temporary modification of the Consent Decree prior to *LULAC I* certainly disappeared after the mandate was issued. *See, e.g.*, *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) ("'The mandate rule requires a district court on remand to effect our mandate and to do nothing else.'") (citation omitted). The district court was therefore not free to grant the City and LULAC's temporary modification request.

Although the district court had limited time to conduct the proceedings required by *LULAC I* before the May 2012 election,[6] it was not free to depart from that mandate. If the parties believed that there was insufficient time in which to comply with *LULAC I*, they could have sought to modify the mandate.[7]

---

[5] *See Mahan v. Howell*, 410 U.S. 315, 332 (1973) ("Application of interim remedial techniques in voting rights cases has largely been left to the district courts."); *see also Branch v. Smith*, 538 U.S. 254, 265 (2003); *Lopez v. Monterey Cnty., Cal.*, 519 U.S. 9, 18 (1996); *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *Campos v. City of Houston*, 968 F.2d 446, 450 (5th Cir. 1992) (holding that district court "had the power to grant some form of interim relief" for the Houston City Council elections, pending an unresolved Section 2 Voting Rights Act case and in the absence of a Section 5 precleared redistricting plan).

[6] As noted above, the mandate was not issued until December 29, 2011, and the district court states that it did not receive the mandate until January 9, 2012. The pre-election filing deadline for City Council candidates was set for February 4, 2012.

[7] Fifth Circuit Rule 41.2 provides that "[o]nce issued a mandate will not be recalled except to prevent injustice." In accordance with that rule, "[o]n a number of occasions, this court has recalled and modified its mandates." *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 593 (5th Cir. 2006) (footnote omitted). This court "has the innate power to recall and then relax its mandate on a proper showing. The more orderly way is . . . for the party affected to formally petition this Court to relax or modify its mandate to permit the trial court to take the requested action." *Dickerson v. Cont'l Oil Co.*, 476 F.2d 635, 636 (5th Cir. 1973) (citation omitted); *see also Hall*, 465 F.3d at 593 n.21 (citing *Dickerson*). A panel may recall and amend a mandate if "the circumstances warrant deviation from the rehearing procedure and the

No. 12-50131

They failed to do so, and therefore had no alternative but to abide by the mandate's instructions.

Because the district court did not comply with the mandate of *LULAC I* and was without authority to order a temporary modification of the Consent Decree, we conclude that the Order was erroneous. We therefore vacate the Order and remand this case to the district court. On remand, we direct the district court to fully comply with the *LULAC I* mandate, and issue a final decision on the requested permanent modification of the Consent Decree no later than May 31, 2012. It goes without saying that sooner would be better. Any subsequent appeal or interim motions will be heard by this panel.

*2.    Election Schedule*

Texas law provides that general elections may be held on either the second Saturday in May or the first Tuesday after the first Monday in November. TEX. ELEC. CODE § 41.001(a). Although City Council elections are presently set for May 12, 2012, it will not be possible for the district court to comply with the *LULAC I* mandate and our mandate before that date. Therefore, at the suggestion of the City and LULAC, we order that the election for City Council be held on November 6, 2012, as provided by Section 41.001(a)(3) of the Texas Election Code. On remand, the district court should consult with City election officials to determine any changes to pre-election deadlines that may be necessary in advance of the November 6, 2012 election.[8] Upon motion by the City

---

equities of the case require recall and reformation of a mandate." *In re Incident Aboard the D.B. Ocean King on Aug. 30, 1980*, 877 F.2d 322, 327 (5th Cir. 1989) (footnote and internal quotation marks omitted); *id.* (recognizing an appellate court's power to "recall and amend a mandate to prevent injustice").

[8] The parties have identified the following pre-election dates that will require alteration for the November 6 election: (1) deadline for candidate filing, (2) date upon which candidates draw for ballot position, (3) deadline for candidate withdrawal from the ballot, (4) deadline for mailing of ballots to military and overseas voters, (5) date for public logic and accuracy testing for early voting, (6) deadline for voters to apply for a ballot to vote by mail, and (7) date for

9

and after any hearing that is advisable, the district court should exercise its authority to order any necessary changes to those deadlines.

*3.     Other Relief*

Morton seeks attorneys' fees as a sanction for the City and LULAC's actions in this case, pursuant to our inherent authority or under 28 U.S.C. § 1927. Morton also requests that we reassign this case to a different district judge in the Western District of Texas upon remand.

We deny Morton's request for attorneys' fees. Such fees may be warranted where we find conduct to be in bad faith, fraudulent, unreasonable, or otherwise deserving of sanction. *See Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) ("A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)); *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995); *see also* 28 U.S.C. § 1927 (stating that attorney's fees are warranted where "[a]ny attorney . . . so multiplies the proceedings in any case unreasonably and vexatiously"). While we disagree with their legal arguments, we have no reason to conclude that the City and LULAC have not litigated this matter in good faith. Attorneys' fees are therefore unwarranted.

We also deny Morton's request for reassignment. Although we have the authority to order reassignment, see *Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997), we have emphasized that it is an "extraordinary power that is rarely invoked." *In re DaimlerChrysler Corp.*, 294 F.3d 697, 701 (5th Cir. 2002) (citation and internal quotation marks omitted). We have explained that reassignment may be authorized where "the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her

public logic and accuracy testing for election day voting.

mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected," or where "reassignment is advisable to preserve the appearance of justice." *Id.* at 700-01 (citation omitted). We have also ordered reassignment where "the facts might reasonably cause an objective observer to question [the judge's] impartiality." *Id.* at 701 (alteration in original) (citation and internal quotation marks omitted). Neither standard is satisfied here. Morton has not provided any evidence that might lead us to question the district court's impartiality; he points only to erroneous legal decisions. Morton also contends that the district court has "at times expressed hostility" towards him, but we find no evidence of such hostility.

## IV. CONCLUSION

For the foregoing reasons, we VACATE the Order of the district court entered February 3, 2012 and REMAND this case to the district court for further proceedings consistent with *LULAC I* and with this opinion. We direct the district court to issue a final decision on the requested permanent modification of the Consent Decree no later than May 31, 2012. We also DENY Morton's request for attorneys' fees, and DENY Morton's request to reassign this case upon remand.

We order that the City Council election shall be held on November 6, 2012, pursuant to Section 41.001(a)(3) of the Texas Election Code, and direct the district court to order any necessary modifications to pre-election deadlines.

Any subsequent appeal or interim motions will be heard by this panel.

Morton's Motion for Stay is DENIED AS MOOT.

The mandate shall issue forthwith.