Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant-Appellant.

No. 72–2943.

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1973.

Wm. P. Simmons, Jr., Eric B. Meyers, Muller & Mintz, Ray C. Muller, Miami, Fla., Ross L. Malone, Gen. Counsel, General Motors Acceptance Corp., Eugene L. Hartwig, Detroit, Mich., for defendant-appellant.

John K. Light, William J. Kilberg, Solicitor, Carin Ann Clauss and Donald S. Shire, Department of Labor, Washington, D. C., for plaintiff-appellee.

Before GEWIN, THORNBERRY and RONEY, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an action brought by the Secretary of Labor to enjoin the General Motors Acceptance Corporation from violating the overtime and record keeping provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and from withholding more than $92,000 in unpaid overtime compensation from twenty-six

employees. The employees in question were district representatives, field representatives, and telephone collection men; their basic task was collecting overdue accounts and repossessing automobiles. Their jobs naturally demand long and irregular hours in the field. Because the men work on their own and without direct supervision, GMAC computes their hours worked (and thus wages) by relying on time sheets completed by the employees in the field. The court below found that despite efforts of upper echelon management to encourage accurate overtime reporting, the employees nevertheless understated their overtime because of pressure brought to bear by their immediate superiors. The trial court found that these supervisors insisted that reported overtime hours be kept to a stated minimum level, thus forcing the employees to work unreported and thus uncompensated hours of overtime. The trial court, 347 F.Supp. 9, concluded that GMAC had willfully violated the FLSA and therefore awarded back pay for three years' unreported overtime to twenty-six employees, including eleven who did not testify at trial. GMAC appeals from the trial court's decision, and we affirm.

On appeal GMAC raises three points of error. It maintains it did not violate the FLSA because the company had no actual or constructive knowledge that these employees were working unreported, uncompensated hours of overtime. GMAC further claims that even if it did violate the FLSA, the violation was not willful and therefore a two-year statute of limitations should apply, instead of the three-year statute applied by the trial court. GMAC's last point is that there was no competent evidence in the record to justify an award to the eleven employees who did not testify at trial.

GMAC's principal argument is that it cannot have violated the FLSA because it had no knowledge of the unreported overtime. The company relied on its employees to report fully all the hours worked. In fact the record contains a series of memoranda and instructions promulgated by upper management to encourage full reporting of all hours worked by employees. If the employees are not paid for all overtime hours worked it is because they have voluntarily failed to report those hours to the company. While it may be true that the company has had no actual knowledge of the unreported overtime hours, we believe the company had constructive knowledge.

This court's latest pronouncement on the issue of employer knowledge in FLSA cases came in Gulf King Shrimp Co. v. Wirtz, 5th Cir. 1969, 407 F.2d 508. In that case the employer maintained he did not have actual knowledge that minors were illegally working in his factory. In response to that position we said:

> With these principles in mind we need only to inquire whether the *circumstances* of the present case were such that the employer either had knowledge that minors were illegally in his employ, or else had the "opportunity through reasonable diligence to acquire knowledge." 407 F.2d 508, 512.

In the instant case the trial court found that during the three years preceding this lawsuit twenty-six employees had been working an average of thirteen hours of overtime each week. It would seem that an employer exercising reasonable diligence would acquire knowledge of this fact. Indeed, GMAC's upper management regularly encouraged the full reporting of overtime and sought to learn of all overtime worked, but the trial court found that the employees' immediate supervisors insisted that all work be completed within certain defined time limits and that "the pervasive effect of such instructions from defendant's supervisors to its employees was that an employee was limited in the number of hours he could turn in for payroll purposes irrespective of the number of hours actually worked. The defendant's district representatives, field representatives and certain of the side telephone collection men regularly worked in excess of forty hours per

week but with rare exception, were only allowed to turn in, record, and be paid for forty to forty-two hours." Because the immediate supervisors were primarily responsible for the employees' failing to report all overtime, we believe they may have had actual knowledge of the unreported overtime. At the very least they had constructive knowledge, for they had the opportunity to get truthful overtime reports but opted to encourage artificially low reporting instead. The company cannot disclaim knowledge when certain segments of its management squelched truthful responses.

GMAC appeals also from the trial court's finding that its violation of the FLSA was willful. Section 6(a) of the Portal-to-Portal Act, 29 U.S.C. § 255(a), as amended 1966, provides a two-year limitation on actions to recover unpaid compensation, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Thus a finding of willfulness increases defendants' exposure to liability by fifty percent. GMAC advances two reasons why its actions in any violation of the FLSA cannot be characterized as willful. First, the upper levels of GMAC management frequently instructed branch managers and employees in the importance of accurate, honest overtime reporting and made every effort to encourage employees to report all hours worked. Second, some employees falsified their activities report and prevented GMAC management from knowing how many hours they were working. Thus, if GMAC gave its employees every opportunity to report all overtime hours worked and encouraged the employees to do so, and some employees responded by falsifying their overtime reports, any violation of the FLSA by defendant was purely inadvertent and not willful. We disagree with this view.

This court treated the question of employer willfulness in FLSA violations in Coleman v. Jiffy June Farms, Inc., 5th Cir. 1972, 458 F.2d 1139, cert. denied, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d

219. In that case an employer instituted a new overtime pay rate after counsel advised him that the new rate would not violate the FLSA. Because he had checked with counsel, and because he was acting in good faith, he claimed that the resulting violation of the FLSA could not be willful. This court disagreed and found willfulness because there was substantial evidence in the record "to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?" 458 F.2d at 1142. In that case the court found the employer knew of the possible applicability of the FLSA because he had consulted his lawyer to see if his actions would be in violation.

■ Although the court in Coleman v. Jiffy June Farms, Inc. limited its decision to the particular facts of that case, we think the same approach should be used in the instant case. In both cases an employer with knowledge of the possible applicability of the FLSA took deliberate action that was later characterized as a violation. The record indicates that GMAC was apprised of the meaning and scope of the FLSA by virtue of previous wage-hour investigations which disclosed a number of violations. These investigations ended in stipulated settlements. GMAC's awareness is also indicated in memoranda issued by its corporate headquarters. One such memorandum, dated January 27, 1969, recognizes that the long and irregular hours worked by the field personnel of the branch offices, coupled with the responsibility of management to maximize efficiency and effectively utilize employees' time, could result in the underreporting of hours of work and that such underreporting might "subject GMAC to possible unanticipated legal liability." The memo added that "field employees constitute the major potential problem for GMAC in Wage and Hour Law compliance." Other memoranda and instructions in the record also indi-

cate a keen GMAC awareness of the wage and hour problem presented by their district and field representatives and telephone collection men. These memoranda and instructions communicated FLSA awareness from upper management to lower management and to employees.

Despite these instructions and memoranda the employees' immediate supervisors persistently reminded the employees that their jobs were to be performed in forty to forty-two hours. Once again we must note the lower court's finding that "the pervasive effect of such instructions from defendant's supervisors to its employees was that an employee was limited in the number of hours he could turn in for payroll purposes irrespective of the number of hours actually worked." Thus while one level of management had a keen awareness of possible FLSA violations in the area of overtime compensation, a lower level of management intentionally proceeded with a course of action that has now been characterized as an FLSA violation. Under the *Coleman* v. *Jiffy June Farms, Inc.* test such a violation must be termed willful. The trial court was correct in allowing a three-year statute of limitations.

Appellant's last point of error is that the trial court should not have included in its award eleven employees who did not testify at the trial because appellee did not introduce sufficient evidence to show that they had worked uncompensated overtime hours. This is a determination of fact to which we will apply the "clearly erroneous" standard.

The trial court found that "the defendant's district representatives, field representatives, and certain of the side telephone collection men regularly worked in excess of forty hours per week, but with rare exceptions, were only allowed to turn in, record, and be paid for forty to forty-two hours." We interpret this finding to mean that as a general rule this type of GMAC employee worked unreported overtime hours. The court's finding is not clearly erroneous, for evidence in the record supports such a conclusion. Sixteen employees testified that they worked unreported hours of overtime. Furthermore, a government investigator interviewed six employees, examined GMAC records and concluded that GMAC employees in this type of job consistently failed to report all the overtime hours worked. From these two sources, the employees' testimony and the investigator's testimony, the trial court might well have concluded that plaintiff had established a prima facie case that all thirty-seven employees had worked unreported hours. At that point the burden of proof shifted to the defendant, and it was his obligation to show which of the employees had reported all overtime hours. Appellant produced ten such employees and the trial court accordingly omitted them and one other from its award. The ten men who reported all overtime hours were those who resisted the "pervasive effect" of the supervisors' instructions.

The judgment of the district court is affirmed.