# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 16, 2013

Lyle W. Cayce
Clerk

No. 12-50534

ABIGAIL F. RANSOM, Individually and on Behalf of Others Similarly Situated; BONNIE KURZ, Individually and on Behalf of Others Similarly Situated; LORI A. HOPMANN, Individually and on Behalf of Others Similarly Situated; VERNON K. HENNEMAN, JR., Individually and on Behalf of Others Similarly Situated; DANIEL W. OWINGS, Individually and on Behalf of Others Similarly Situated,

Plaintiffs - Appellees Cross-Appellants

v.

M. PATEL ENTERPRISES, INCORPORATED, doing business as Party City, doing business as Party Pig Superstore; MITESH M. PATEL; JAYMINI AMIN, also known as Jaymi Patel,

Defendants - Appellants Cross-Appellees

Appeals from the United States District Court
for the Western District of Texas

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

After a jury found Abigail F. Ransom and fifteen other executive managers (collectively hereinafter, plaintiffs) of Party City, a retail chain, to be misclassified by their employer as exempt from the Fair Labor Standards Act

No. 12-50534

(FLSA), 29 U.S.C. § 201, *et seq.*, the plaintiffs became eligible for an award of overtime wages. Because the plaintiffs were paid a weekly salary, the trial court had to compute their hourly rate of pay in order to award overtime damages. Disregarding the so-called "fluctuating workweek" (FWW) method of determining overtime damages – a method established by precedent and relevant federal regulations as applicable in this case – the district court, presided over by a magistrate judge, instead determined overtime damages by using the magistrate judge's unorthodox preferred methodology.[1] The plaintiffs' employer, M. Patel Enterprises, Incorporated[2] ("Party City"), contends this method of calculation was error, and we agree. We therefore REVERSE the ruling of the district court, VACATE the amount of actual damages awarded to plaintiffs as overtime and REMAND for recalculation. We further VACATE the award of liquidated damages and the amount of attorneys' fees and REMAND for reconsideration.

I.

In this opinion, we will proceed as follows: First, we discuss the facts at issue and the lower court proceedings leading to this appeal. Second, we consider the standard of review and the specific employment arrangement between the plaintiffs and Party City. Third, finding the district court's factual findings to be clearly erroneous, we sort through relevant FLSA background principles and precedent, apply them to this case, and explain why they compel the use of FWW in calculating the amount of overtime damages the plaintiffs are due. Finally, we consider the plaintiffs' cross appeal, as well as liquidated damages and attorneys' fees.

---

[1] The parties consented to proceed before a magistrate judge for all purposes. 28 U.S.C. § 636(c)(1); FED R. CIV. P. 73(a).

[2] Defendant-Appellant M. Patel Enterprises was an Austin-area owner of a Party City franchise of stores.

No. 12-50534

Because the basic question here can get lost in the weeds of the regulations, the arguments, and the methods of calculation, we state its simplicity: How much overtime pay does Party City owe to its employees under the FLSA? By proceeding along the course outlined above, we will determine the proper method of calculation and remand to the district court for computation of the proper amount.

## II.

This suit arose in Austin, Texas, where the plaintiffs were employed as executive managers (EMs) at Party City retail stores. The plaintiffs filed a collective action under the FLSA in 2010. They alleged that Party City had misclassified them as exempt from the overtime provisions of the FLSA. Furthermore, by paying them only a weekly salary that did not vary – even when the plaintiffs had often worked weeks of irregular, consistently long hours – Party City owed them overtime and additional hourly pay for such workweeks. In due course, the case proceeded to jury trial, presided over by a magistrate judge.[3] On November 14, 2011, a jury found that Party City had misclassified the plaintiffs as exempt from the FLSA and overtime pay; but the jury also held that this FLSA violation was not willful.

In this appeal, neither party contests Party City's liability as found by the jury. Instead, the appeal centers on the trial court's error in calculating the overtime damages. In motions for summary judgment before the magistrate judge, the plaintiffs argued for the so-called "*EZPawn*" method[4] for calculating

---

[3] The trial court had federal question jurisdiction under the FLSA, 29 U.S.C. § 201, *et seq.*, and 28 U.S.C. § 1331.

[4] This method comes from *In re EZPawn LP Fair Labor Standards Act Litig.*, 633 F. Supp. 2d 395 (W.D. Tex. 2008), a decision written by the same magistrate judge that handled this case. Generally speaking, this method computes an employee's "regular rate" of pay, *see* discussion *infra*, by dividing his weekly salary by 40, the number of hours in a standard workweek. *See, e.g.*, *id*. at 404 (providing an example of an overtime compensation calculation utilizing a denominator of 40 in computing the regular rate). An overtime payment of 150%

overtime damages, while Party City argued for the application of the FWW method.[5] The court denied each party's motion for summary judgment. The court held that "[d]etermining the proper overtime calculation method is a fact-dependent inquiry, and the facts [we]re in dispute . . . ." *Ransom v. M. Patel Enters., Inc.*, 825 F. Supp. 2d 799, 810 (W.D. Tex. 2011). The district court, however, found that "the parties have stipulated regarding the number of hours worked by the Plaintiffs and the salary each was paid during the relevant period . . . [that] there are no issues to send to the jury on damages." *Id.* The case then proceeded to trial on liability only.

The jury, as previously noted, found that Party City had misclassified the plaintiffs as exempt from the FLSA. With the jury's determination of FLSA liability in hand, the court then turned to its responsibility: the calculation of damages. The court's analysis of actual damages focused on two related questions: first, determining plaintiffs' "regular rate" of hourly pay and, second, how that regular rate should be used to compute the overall amount due to

---

of the regular rate for all hours worked over 40 during the workweek is then awarded. *Id.*

[5] 29 C.F.R. § 778.114(a) provides an explanation of FWW:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many . . . . Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of salary to obtain the applicable hourly rate for the week.

*Id.* The assumption of the FWW is that the weekly salary pays not just for the first 40 hours worked at straight time pay, but also for all of the hours over 40 at straight time pay. This means that the employee has received 100% of the straight time compensation for all of the hours worked, and thus the only additional amount due is the 50% "overtime premium" for hours over 40. *See, e.g., Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1139 (5th Cir. 1988).

No. 12-50534

plaintiffs.  With regard to the first question, the magistrate judge divided the plaintiffs' weekly salary by 55, the number of hours the magistrate judge found that the weekly salary was "intended to compensate."  *See* 29 C.F.R. § 778.113(a).  As for the second question, he  noted that the FLSA in its plain terms required that a non-exempt employee be paid *one and one-half* times his or her regular rate for all hours worked over 40, *see* 29 U.S.C. § 207(a), and then, proceeding from this premise, the magistrate judge devised his own formula, saying:

> Given the finding . . . that the weekly salary is properly viewed as payment for 55 hours of work, this means that for the hours from zero to 40, Plaintiffs have been paid all they are entitled to; for hours over 40 and up to 55, they have been paid only the regular rate; and for hours over 55, they have not been paid at all.  For the purpose of calculating damages, the Plaintiffs are therefore entitled to one-half the regular rate for each hour worked over 40 up to 55, and for all hours over 55, the Plaintiffs shall receive one and one-half times their regular rate.

*Ransom v. M. Patel Enters., Inc.*, 2012 WL 242788, *2 (W.D. Tex. January 25, 2012).  The court then used such formula to calculate the actual damages to which the plaintiffs were entitled.

Finally, the court addressed the issue of liquidated damages and attorneys' fees.  Finding that Party City had failed to show a good faith attempt to comply with the overtime laws, the district court awarded liquidated damages in an amount equal to the actual damages.  It further ordered Party City to pay legal fees.

In summary, when judgment was entered for 14 of the plaintiffs,[6] they recovered (1) $66,250.20 in unpaid overtime, (2) $1,267.92 in unpaid minimum wages, and (3) because the court found Party City's violations were not in good

---

[6] Although the suit originally involved 16 plaintiffs, two recovered nothing based on a two-year statute of limitations for non-willful FLSA misclassifications. *See* 29 U.S.C. § 255(a).

No. 12-50534

faith or reasonable, equal amounts as liquidated damages. The court also awarded $331,880.00 in attorneys' fees and $8,764.03 in costs and expenses. The court entered final judgment on February 15, 2012, and both sides timely appealed.

## III.

Before we begin our analysis, we briefly turn to our standard of review. The primary issue on appeal – the trial court's calculation of total unpaid overtime – is a mixed question of law and fact. Here, the number of hours the plaintiffs' fixed salary was intended to compensate, from which an employee's "regular rate" of pay (salary ÷ hours), is a question of fact; once the regular rate of hourly pay been determined, the appropriate methodology to determine the total amount owed, a question of law, is then applied. For non-jury issues in a civil case, like the post-trial damage calculation proceeding here, this court reviews conclusions of law *de novo* and findings of fact for clear error. *See Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000); *see also* FED. R. CIV. P. 52(a)(6) (stating that "findings of fact . . . must not be set aside unless clearly erroneous"). When reviewing mixed questions of law and fact, this court reverses only if the findings are based on a clearly erroneous view of the facts or a misunderstanding of the law. *Tokio Marine & Fire Ins. Co., Ltd. v. FLORA MV*, 235 F.3d 963, 966 (5th Cir. 2001). A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *N.A.A.C.P. v. Fordice*, 252 F.3d 361, 365 (5th Cir. 2001). As we discuss below, the overwhelming evidence shows that the plaintiffs' salary was intended to compensate all hours worked, and that these hours would fluctuate. Consequently, the magistrate judge's calculation – which rejected the FWW method – was based on a misunderstanding of the law and a clearly erroneous view of the facts. *See FLORA MV*, 235 F.3d at 966.

No. 12-50534

IV.

We now broach the most important issue in resolving this appeal – the plaintiffs' employment arrangement between them and their employer.[7]  Here, the understood arrangement is not a written agreement that clearly lays out the plaintiffs' terms of employment, including the number of hours they were required to work.  The magistrate judge in calculating damages, however, interpreted the parties' mutual understanding to mean that the plaintiffs' salary compensated specifically for 55 hours per week.  Yet the magistrate judge's expressed findings do not support such a view, and various parts of his opinion indicate he ill-considered the purported 55-hour agreement in other ways as well.  In the following excerpt from his January 25, 2012 memorandum opinion and order, he said:

> Here, the evidence at trial demonstrates persuasively that the parties did in fact discuss how many hours the weekly salary was

---

[7] This matter is dispositive because the number of hours the plaintiffs worked each week dictates the calculation of their regular rate of pay and thus determines the amount of overtime damages the employer must pay.

To determine an employee's "regular rate" of pay, we start with the basic premise that the FLSA requires overtime compensation be paid to employees who work for more than 40 hours in a week, and this determination is made on a week-by-week basis.  *See* 29 U.S.C. § 207(a) (stating that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed.").  The term "regular rate" is not defined by statute, but is defined by regulation.  *See* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours *actually worked* by him in that workweek for which such compensation was paid.") (emphasis added); *accord*, *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 n.16 (1942) (stating that "[w]age divided by hours equals regular rate.").  This general rule, however, is slightly modified when an employee is paid a specific weekly salary for a specified number of hours – that is to say, a non-fluctuating workweek: the regular rate is then calculated by "dividing the salary by the number of hours which the salary is *intended to compensate*." 29 C.F.R. § 778.113(a) (emphasis added).  Thus, when an employee receives fixed pay for a specific number of predetermined hours (say, 40), the regular rate equals pay divided by that same number of hours, *see id.*, but when he receives fixed pay for unspecified hours that fluctuate week by week, the regular rate equals pay divided by all hours actually worked in the workweek.  *See* 29 C.F.R. § 778.114(a).

> intended to compensate. *Almost* all the Plaintiffs who testified stated that when hired they were told they would work a *minimum* of 55 hours per week. On the work schedules, the Plaintiffs were *ordinarily* scheduled to work 55 hours each week. The Plaintiffs testified that *while they worked varying hours*, in a normal week, they worked about 55 hours.

*Ransom v. M. Patel Enterprises, Inc.*, 2012 WL 242788, *2 (W.D. Tex., January 25, 2012) (emphasis added).

Furthermore, the deposition testimony to which the plaintiffs look for support fails to bolster the magistrate judge's finding. In one example, Jodie Herrera, Party City's bookkeeper and unofficial office manager, testified that the EMs at Party City "were expected to work *50 to 55 hours a week*" (emphasis added) and that Party City had said this "numerous times." The plaintiffs and, apparently, the magistrate judge, erroneously consider such testimony proof of a standard 55-hour workweek, even though the testimony itself literally suggests fluctuating hours (somewhere in the range of "50 to 55"). Other testimony that the plaintiffs rely on follows this pattern. A former district manager named Patti Tomasek, stated that the *minimum* hour requirement for EMs was 55 hours. And in yet a further example, plaintiff Lori Hopmann testified:

> In the interview [for the position at Party City] I was told [I was going to work] a *minimum* of 55 hours and typically that's all it would be. During Halloween, a couple of weeks *would be over*.

(Emphasis added.) The record is replete with statements from other employees similar to Hopmann, Tomasek, and Herrera's – that the *minimum* requirement was around 50 or 55 hours but there would be weeks when employees would be expected to work more. None of these statements establish that the EMs' salary was intended to compensate for a set 55-hour workweek. They simply suggest that employees understood they would work "roughly" or "around" or a "minimum" of 55 hours, not that their salary was meant to compensate for that

"estimate" of only 55 hours.  In sum, the type of evidence the magistrate judge relied upon  simply does not support a finding of a set 55-hour workweek.

Additionally, there is testimony that the magistrate judge's finding does not consider.  Such testimony, in fact, clearly shows that employees knew their hours would fluctuate and that their salary would not increase or decrease with those fluctuations.  For example, Ms. Hopmann, cited above, also testified that her understanding was that her compensation was for any and all hours she worked, not for 55 hours.  At her deposition, she was asked:

> Q. [Ms. Hopmann,] you knew when you were being hired that the salary was going to cover the number of hours you worked, regardless of how many hours you worked that week, right?
>
> A. Yes.
>
> Q. Okay.  *And you've verified that on your application*, have you not, that you knew the hours were going to change from week to week, right?
>
> A. Yes.

(Emphasis added.)   Similarly, Bonnie Kurz, a plaintiff, testified that she understood that her salary was meant to compensate her for fluctuating hours:

> Q. . . . [D]uring the time you were [working at Party City], the hours fluctuated, correct?
>
> A. They did, sir.
>
> Q. And when you were applying for the job, you expected those hours to fluctuate; is that right?
>
> A. Yes, sir . . .
>
> Q. In [your job application], there's a question.  It says "can you work a flexible schedule where days and number of hours scheduled is different each week?"  Did I read that correctly?
>
> A. Yes, sir.
>
> Q. And you circled yes?
>
> A. Yeah.

No. 12-50534

Q. So you knew that when you applied for the job?

A. Yes, sir.

The excerpts above and similar testimony establish that the plaintiffs understood that the hours would fluctuate but their weekly salary would not. Indeed, the record contains copies of the Party City employment application, which the magistrate judge appears to have ignored entirely. The applications state explicitly that "*Party City stores . . . have extended business hours for special events, store promotions, inventory, or holidays.*" Applicants were asked the question: "Can you work a *flexible* schedule where days and number of hours scheduled is *different each week*?" (emphasis added).[8] We fail to see how the magistrate judge could have construed "flexible schedule" and "different number of hours" to mean only and specifically "55." Furthermore, our review of actual weekly data reveals no more than a handful of times that any of the plaintiffs worked a precise 55-hour week, and the workweek is more often 58 or 59 hours, with hours occasionally falling well below 55. Thus, under either 29 C.F.R. § 778.113, which considers how many hours employees' salary was *intended to compensate* (here, all hours worked), or 29 C.F.R. § 778.114(a), which applies FWW (and thus divides by all hours worked), the regular rate is not calculated by the divisor of 55 utilized by the magistrate judge. Instead, it is computed by dividing the salary by the number of hours the plaintiffs *actually worked* in a given workweek. In sum, the magistrate judge clearly erred in finding as a fact that the mutual understanding was for a workweek specifically and only for 55 hours; the workweek fluctuated and was intended to fluctuate. Only the salary was fixed.

---

[8] Indeed, no evidence showed that any employee had the understanding either that the workweek was 55 hours, no more, no less, or that the salary was only for the first 55 hours of work. Nor, as we have pointed out, was the magistrate judge able to make such a finding; when his order is parsed, it even acknowledges that "[t]he Plaintiffs testified that . . . they *worked varying hours . . . .*" *Ransom*, 2012 WL 242788 at *2 (emphasis added).

No. 12-50534

V.

Having determined that the magistrate judge clearly erred as to the terms of plaintiffs' employment, we now turn to relevant precedent. In particular, three significant court decisions confirm that, under the specific facts of this case, the magistrate judge's 55-hour methodology was error and that, on remand, the court should apply FWW: one Supreme Court decision, *Overnight Motor Transp. Co. v Missel*, 316 U.S. 572; our own precedent, *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988); and an analogous recent Seventh Circuit opinion addressing similar facts, *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010).

A.

*Missel* provides the Supreme Court's approach to a case like ours. In *Missel*, the employee was paid a weekly wage for fluctuating hours; as with the plaintiffs here, he received the same amount of compensation no matter how many hours he worked. 316 U.S. at 574. Plaintiff-employee Missel brought suit, alleging that he was entitled to overtime. The Court agreed, holding that Missel's weekly wage only compensated him straight-time pay for the hours he worked and did not include an overtime premium due under the Act. *Id.* at 580. The Court concluded that the "regular" rate of hourly pay was the weekly salary divided by the number of hours worked each week. *Id.*

Interpreting *Missel* to require a "fact specific inquiry" regarding damage methodology, the magistrate judge found important the "facts that Missel . . . had entered into a contract that Missel would work a fluctuating workweek and that he worked under the agreement for several years." Because there was no similar written agreement here, the magistrate judge said *Missel* did not require the use of FWW. This assumption was error. Although it is true that Party City and the plaintiffs actually signed no written agreement, there was an agreement – and there is no authority that requires the agreement to be in writing.

11

No. 12-50534

Moreover, the job application clearly indicates, in writing, that Party City employees understood their job included "flexible schedules" and "different hours" each week.[9]

### B.

*Blackmon v. Brookshire Grocery Co.*, which, like *Missel,* is controlling authority for resolving this case, reaffirmed our circuit's approach to the computation of unpaid overtime.[10]  835 F.2d 1135.  The plaintiffs in *Blackmon* were meat market managers claiming they were entitled to overtime from their employer, Brookshire.  *Id.* at 1136.  The managers were employed by Brookshire with the understanding that they would be paid a fixed weekly salary and would work whatever number of hours were required to get the job done:  "Each was aware that the fixed weekly compensation would not fluctuate with the hours worked."  *Id.* at 1137.  Eventually the managers became dissatisfied with the irregular but consistently long hours and filed suit seeking overtime compensation.  *Id.*  In the section of the opinion relevant to this case, we explained the correct method of calculating unpaid overtime was FWW:  first, to compute the regular hourly rate, "divid[e] the *actual hours worked* each workweek into the fixed salary."  *Id.* (emphasis added).  Then, "[t]he overtime payment for that week is [] determined by multiplying all hours over 40 in the workweek *by ½* the regular rate for that workweek."  *Id.* at 1139 (emphasis added).

---

[9] *See also* Wage & Hour Div., U.S. Dep't of Labor, *Retroactive payment of overtime and the fluctuating workweek method of payment*, Opinion Letter FLSA 2009-3 (Jan. 14, 2009), 2009 WL 648995 (approving FWW to calculate the amount of overtime due to employees whose hours fluctuated above and below a minimum hourly expectation each week).

[10] In an earlier case, *Warren-Bradshaw Drilling v. Hall*, 124 F.2d 42, 44 (5th Cir. 1941), we held that "if there is no agreement fixing the amount to be paid for regular and overtime work, the regular rate, as to it, may properly be determined by dividing the total pay each week *by the total hours worked.*" (Emphasis added.)

12

No. 12-50534

Thus, *Blackmon* and *Missel* reflect the same instruction for this panel and, one would think, for the instant magistrate judge as well: FWW is the proper method of calculating overtime when an employee like the Party City EMs here are paid a weekly wage and are expected to work fluctuating hours. But acknowledging that *Blackmon* "arguably controlled this case," the magistrate judge nevertheless refused to follow it on the ground that it was wrongly decided. *Cf. EZPawn*, 633 F. Supp. 2d at 406 (the same magistrate judge calling *Blackmon* "fundamentally flawed"). We should say, we find this an uncommon reason for the magistrate judge not to follow binding precedent.

C.

Finally, *Urnikis-Negro*, a recent Seventh Circuit decision, further demonstrates the propriety of applying FWW here. 616 F.3d 665. In that 2010 case, the female plaintiff prevailed in her FLSA misclassification suit and was awarded overtime but was unhappy with the district court's calculation of the amount of pay she was owed, and thus appealed. *Id*. Although she and her employer had never "discussed the number of hours she would be expected to work when [the company] hired her," the district court "found that she also understood that her [fixed weekly] salary was to cover whatever time she was called upon to work in a given week." *Id*. at 667. The district court had based its conclusion on § 778.114(a), *see supra* n.5. The Seventh Circuit considered § 778.114(a) to be a "dubious source of authority" that most certainly "is not a remedial measure" and, as an interpretive bulletin, is entitled only to a "measure of respect," not full *Chevron* deference; nevertheless, the Seventh Circuit found that the district court's conclusion was independently supported by *Missel*. *Id*. at 676, 678-79, 681. Because Urnikis-Negro's wage was "intended to compensate her not for 40 hours per week or some other fixed number of hours, but for any and *all* hours that she worked in a given week . . . it is *Missel* which dictates how

the regular rate of pay must be calculated . . . ." *Id*. at 681. *Missel*, as discussed above, endorses FWW.

In our view, the Seventh Circuit properly affirmed the FWW determination of the regular rate of pay. The relevant facts of the plaintiffs' employment in the present case are quite similar to the plaintiff's in *Urnikis-Negro.* There, as here, the testimony showed that the employee *expected* to work some general number of roughly fixed hours; yet, after she was hired, the employee often worked substantially *more* than that number of hours each week, and she was always paid only her fixed weekly wage. *Id*. at 680. The case before us fits this precedent. As outlined above, the EMs at Party City were told that the workweek was "around" 55 hours, but they were also told that the number would fluctuate from time to time. Moreover, the undisputed facts demonstrate that they often worked more,[11] and sometimes significantly fewer hours.[12] This course of conduct, along with the parties' initial understanding of the employment arrangement, establishes that the plaintiffs here were to be paid a fixed salary for the total number of hours they worked in a week. *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 824-25 (5th Cir. 2003) (stating that "[w]e can determine how many hours the salary is 'intended to compensate' by examining what happens under the contract."); *see also*, *Urnikis-Negro,* 616 F.3d at 681 n.8 (collecting cases suggesting that, in the absence of an explicit agreement, course of conduct may be used to infer an agreement regarding the number of hours a salary was intended to compensate).

---

[11] For example, plaintiff Bonnie Kurz testified at her deposition that "[t]here was a lot of times we went over 55 hours, yes, sir." The record is replete with other, similar testimony.

[12] The record contains charts of weekly hours worked by each plaintiff during the relevant period. On Abigail Ransom's chart, there are certain weeks in which she worked 44.8, 35.48, 34, and 38.97 hours, for example. Other employees' charts contain similar numbers.

No. 12-50534

The magistrate judge, however, dismissed the authority of *Urnikis-Negro* because the Seventh Circuit's holding, in the magistrate judge's opinion, was "divorced from the facts" of that case. But as stated above, the relevant facts in *Urnikis-Negro* are almost identical to those here, where employees regularly worked more, and sometimes less, than some rough estimate of a fixed number of hours. The magistrate judge's dismissal of *Urnikis-Negro* is, therefore, error because, inter alia, it fails to consider employees' course of conduct.[13]

In sum, the magistrate judge's dismissal of *Missel*, *Blackmon*, and *Urnikis-Negro* is clear error. Because the magistrate judge calculated the plaintiffs' regular rate of pay by dividing the weekly wage by 55, rather than by all hours worked, we hold that his decision was based upon a clearly erroneous view of the facts – that is, his view that the parties had a mutual understanding that the workweek was for 55 hours. And because this infected the court's damage calculation, which did not properly apply the 50% overtime premium established by FWW to all hours worked over 40 per week,[14] we also hold that the court simultaneously committed an error of law. Consequently, we vacate the court's award of actual damages.

VI.

---

[13] At the summary judgment hearing in the present case, the magistrate judge admitted his own error in failing to consider course of conduct of the parties as affirmation of a fluctuating workweek, when he said: "So I don't know of any case . . . where a court has said, well the fact that [employee-plaintiffs] came to work [for defendant-employer] and understood that – at least accepted implicit in their actions, that salary for whatever hours they worked is not enough to show the kind of agreement that they need to have. I'm the only one who's done that. Makes me start to think, maybe I've got it wrong."

[14] After determining an employee's "regular rate" of pay, the next step is the calculation of the overall amount of unpaid overtime due. Under FWW, the employee is then "awarded a premium of *one-half* of that rate for the overtime hours he worked that week." *Urnikis-Negro*, 616 F.3d at 678 (emphasis added); *see also*, *Blackmon*, 835 F.2d at 1139. The magistrate judge's calculation considered hours worked in excess of 55 to be uncompensated, thus adding a premium of 150%, rather than only the 50% due under FWW, for hours over 55. This was error. Stated differently, the magistrate judge erred by applying the premium of *one-half* the regular rate only to hours 40 through 55, instead of *all* hours over 40.

15

No. 12-50534

In their brief, on cross-appeal, the plaintiffs voiced one concern[15] that warrants further consideration: that Party City's alleged failure on a number of occasions to ensure payment of the minimum wage forecloses the use of FWW in calculating unpaid overtime compensation. *See Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 355 (4th Cir. 2001) (relying on and characterizing *Urnikis-Negro* as holding "when an employer and employee agree that a fixed salary will constitute payment at the regular rate for all hours worked *and the rate is not lower than the minimum wage*, [FWW applies]") (emphasis added); *see also* 29 C.F.R. § 778.114(c) (stating that "[FWW] may not be used unless [the employee's] salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the [FLSA] . . . ."). Our decision in *Blackmon* addresses this concern: while agreeing that § 778.114 "is inapplicable if dividing the number of hours actually worked into the fixed salary results in an hourly rate below the minimum established by [the FLSA]," 835 F.2d at 1138 n.1, *Blackmon* nonetheless also provided the appropriate solution: "In such instance, the minimum wage must be paid and *that minimum serves as the regular rate of pay* for purposes of computing overtime payments." *Id*. (emphasis added). This conclusion rests on the predicate that the FLSA only requires that the minimum wage be paid for straight-time hours worked.

When the plaintiffs' overtime is recalculated on remand, we have no indication whether this problem will arise. Nevertheless, for any weeks in which applying FWW results in payment of less than the minimum wage for straight time pay, the regular hourly rate for unpaid hours of work is the minimum wage itself.

---

[15] The plaintiffs "cross-appeal," and yet, they devote only one footnote in their entire appellate brief to the issue.

No. 12-50534

VII.

Finally, we address the liquidated damages and attorneys' fees awarded by the magistrate judge. The FLSA, 29 U.S.C. § 216(b), allows for liquidated damages to be awarded for FLSA violations in an amount "equal" to actual damages.[16] *Id.* Because we have held that the district court erred in calculating actual damages, *see supra* Part V, we also vacate the liquidated damage award and remand for the district court to determine what amount, if any, of liquidated damages remains appropriate. As for attorneys' fees,[17] we have held that "[t]he most critical factor in determining an attorneys' fee award is the 'degree of success obtained." *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Because the new damages that will be awarded are relevant to plaintiffs' overall success in litigating this suit,[18] we vacate the amount of the attorneys' fee award and remand for recalculation. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (vacating attorneys' fee award for reconsideration in the light of reversal of

---

[16] The general rule is that the court should award the amount found for actual damages as liquidated damages. *Singer*, 324 F.3d at 822-23. On remand, the district court may (but is not required to) decline to award liquidated damages (or reduce the amount) if the court concludes that the employer acted in good faith or had reasonable grounds to believe that its actions complied with the FLSA. *Id.* at 823. It is the employer's substantial burden to prove good faith and reasonableness. *Id.* We leave the good faith determination and Party City's potential liability for liquidated damages up to the district court.

[17] Under the FLSA, a district court may award reasonable attorney's fees to the prevailing party. 29 U.S.C. § 216(b). Multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work, courts use the so-called "lodestar method." *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir.1999). There is a strong presumption that the lodestar amount is a reasonable fee, although a court may decrease or enhance it based on the factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See also, Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010).

[18] *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (stating "The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded [.]").

17

No. 12-50534

damage calculation); *see also*, *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003) (following reversal of damage award, court remands for reconsideration of attorneys' fees incurred *on appeal*).

## VIII.

In summary, we hold that the record evidence clearly shows that the plaintiffs in this case were paid a fixed weekly salary and were expected to work fluctuating weekly hours. Thus, the district court's 55-hour method of calculating unpaid overtime damages was error, because it miscomprehended the employment arrangement and utilized a divisor of 55 in calculating plaintiffs' regular rate of pay rather than applying a divisor equal to the number of all hours actually worked in such workweek. Consequently, the amount of damages awarded is erroneous. We REVERSE the ruling of the district court, VACATE the amount of actual damages and REMAND for recalculation as instructed in this opinion. We further VACATE the award of liquidated damages and the amount of the attorneys' fee award, and we REMAND for reconsideration of those awards.[19]

REVERSED, VACATED, and

---

[19] Reassignment of a case may be appropriate where "the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 675 F.3d 433, 440 (5th Cir. 2012) (quoting *In re DaimlerChrysler Corp.*, 294 F.3d 697, 701 (5th Cir. 2002) (citation and inset quotation marks omitted)). Here, there is some indication, from his express statements and writings, that the magistrate judge is resistant to the law as set out in this opinion. Because we take note of 28 U.S.C. § 636(c)(4), which states that "[t]he [district] court may, for good cause shown on its own motion . . ., vacate a reference of a civil matter to a magistrate judge . . . ," *see Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 171 (5th Cir. 2011), we leave it up to the district judge to whom the case was originally assigned to determine whether the magistrate judge is the appropriate judge to handle the case on remand.

No. 12-50534

REMANDED.