503 So.2d 1046 (1987)
James T. LOCKHART and Anne A. Lockhart, Plaintiffs-Appellees,
v.
Charles SUTTON and Sandra Price Sutton, Defendants-Appellants.
No. 18,425-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
*1047 Sedric E. Banks, Monroe, for defendants-appellants.
Boles, Boles & Ryan by William R. Boles, Jr., Monroe, for plaintiffs-appellees.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
HALL, Chief Judge.
In this contractual dispute arising out of an agreement to purchase a residence, the Suttons appeal a judgment in favor of the Lockharts for damages resulting from the Suttons' alleged breach of the purchase agreement.
On the night of May 30, 1983, after several hours of negotiation, the Suttons signed an agreement to purchase the Lockharts' home for $76,000.00 on or before June 21, 1983. Simultaneously the Suttons gave a $750.00 deposit check to the Lockharts. The purchase agreement, drawn up by Mrs. Sutton, a licensed real estate agent, provided that the buyer was to assume an existing mortgage at Pelican Homestead. The negotiated agreement further provided that the house was to be sold in an "as is" condition with the buyer to repair the roof. In addition, it was the buyer's responsibility to notify the seller of defects at least twenty-four hours prior to the act of sale. The parties reserved their right to specific performance, reasonable attorney's fees, and all costs occasioned by the other party's default.
The condition of the Lockharts' roof sparked extensive discussion. The principal part of the roof was of a hip type construction which had never leaked, but admittedly was an old roof. The remainder of the roof area consisted of two built-up roofs referred to as flat roofs, one over the den and the other over the utility room. The heart of the discussion focused on the small flat roof over the utility room, which had leaked in the past and showed visible signs of leakage on the interior of the house. The Suttons viewed this area of the house, were notified of the flat roof's condition, and agreed to repair the leaky roof in return for the landscaping surrounding the house.
The next day the Suttons sent a roofing contractor to inspect the general condition of the roof, particularly the cost of repair to the flat roof over the utility room. The roofer, not qualified as an expert at trial, testified the entire roof was in poor condition due to the type of shingles used on the roof. He concluded that the roof in its entirety needed to be replaced. Armed with this information the Suttons sought a $1,000.00 reduction in the original purchase price, an offer which the Lockharts refused.
Thereafter, with the June 21st closing deadline rapidly approaching, the Suttons communicated to the Lockharts that unforeseen delays had arisen in their attempts to secure the necessary loan assumption approval from Pelican Homestead. An exchange of letters ensued. In a letter dated June 17, 1983 the Lockharts' attorney expressed the sellers' intention to enforce the purchase agreement but offered an extension of time in which to allow the Suttons to obtain the loan approval. The Suttons responded with a letter dated June 20, 1983 which stated their intention to enforce the closing date, emphasizing that time was of the essence and *1048 they were not responsible for delays in the processing of their loan application. The Suttons considered the contract to be null and void if the sale was not consummated on or before the closing deadline.
The proposed sale never took place. The closing was set for 2:00 p.m. on June 21, 1983 at the offices of Pelican Homestead. When the Lockharts arrived at the Pelican offices they were notified in writing, by the Suttons' attorney, that the buyers had discovered latent defects in the roof. The letter stated that had the buyers known of these vices and defects, they would not have agreed to purchase the property.
Thirteen months later on August 1, 1984 the Lockharts sold the property to another buyer for $61,500.00 and subsequently instituted this action to recover the difference between the purchase price the Suttons agreed to pay and the price for which the house was later sold, plus other damages suffered as a result of the Suttons' alleged breach of contract.
In an excellent written opinion the trial court rejected the contention that the Suttons were laboring under an error of fact as to the condition of the roof which, the buyers asserted, was a principal cause for entering the contract. The trial court found that no vice or defect existed in the roof and that the Lockharts made full disclosure of the roof's condition to the Suttons. Further, the court held the binding purchase agreement was breached without justifiable cause by the Suttons.
The court awarded the following damages:

1. Thirteen house payment at
 $408.02 per month $5,304.26
2. Thirteen months net utility bills
 to show house 544.87
3. Advertising in News Star World 150.80
4. Realtors commission, five
 percent of $61,500.00 3,075.00
5. Roof repair 250.00
6. Paint 3.42
7. Pest control contract 40.00
 __________
 TOTAL $9,368.35

The court credited to this total the sum of $750.00, representing the Suttons' deposit, leaving a balance of $8,618.35. Pursuant to a clause in the contract the court also awarded $2,300.00 in attorney's fees. The major item of damages sought by the Lockharts, the $14,500.00 difference between the contract price and the price for which the property was later sold, was disallowed by the trial court. The court noted that the correct measure of damages was the difference between the contract price and the market value of the house on the date of the breach, citing Womack v. Sternberg, 247 La. 566, 172 So.2d 683 (1965) and Eanes v. McKnight, 251 So.2d 491 (La.App. 1st Cir.1971), aff'd 262 La. 915, 265 So.2d 220 (1972). The court determined that based upon the evidence presented the fair market value of the house on the date of the breach was $76,000.00. Therefore, the Lockharts were not entitled to recover the $14,500.00 because the contract price and the market value were the same on the date of breach.
The Suttons appealed specifying several assignments of error which present these issues:
1. Whether the roof contained a latent vice or defect sufficient to create an error of fact as to a principal cause for which the Suttons entered into the purchase agreement.
2. Whether the trial court erred in finding that the Suttons' loan assumption was approved by Pelican Homestead.
3. Whether the trial court erred in awarding $2,300.00 in attorney's fees to the Lockharts.
The Suttons argue the presence of defective shingles on the roof unknown to them when the contract was executed constituted an error of fact as to a principal cause for entering the contract and justified their refusal to consummate the sale. The "principal cause" argument is weakened by the Suttons' offer to proceed with the sale if the Lockharts would reduce the $76,000.00 purchase price by only $1,000.00. More important, however, the Suttons simply failed to prove the roof or its shingles contained any latent vices or defects.
In support of their contention that the entire roof was defective, the Suttons offered *1049 the testimony of a local roofing contractor who inspected the roof. The roofer considered the type of shingles attached to the house, Bird Jet I Shingles, to be defective. He further testified that the entire roof was bad and on the verge of leaking; however, he admitted that the roof did not leak nor did he know when it would begin to leak. This was the only evidence presented to show that the roof was defective. The roofer was not qualified as an expert at trial. The Suttons were aware that the roof was old and had a limited life expectancy of less than five years. Furthermore, the Lockharts kept the house for over a year after the contract was executed and the hip roof portion never leaked during that period of time. Thus the record amply supports the trial court's finding that the Suttons failed to prove any latent vices or defects in the roof.
Next, the Suttons contend that the trial court erred in "presuming" that their loan assumption had been approved by Pelican Homestead. This condition, the Suttons maintain, was not met and suspended their obligation to consummate the sale.
The record supports the trial court's conclusion that the loan assumption had been approved. Carrick Inabnett, the attorney who handled loan closings for Pelican Homestead, testified at trial that the closing was scheduled for 2:00 p.m. on June 21, 1983 at the offices of Pelican Homestead. This was consistent with the Lockharts' testimony and the closing deadline provided in the purchase agreement. Mr. Inabnett, who had never been called to close a loan that had not been approved, testified that he spoke with the loan officer at Pelican Homestead who was responsible for the Suttons' loan assumption and was told that the loan had been approved. Furthermore, even Mrs. Sutton acknowledged that the loan had been verbally approved. The trial court was correct in finding that the loan to the Suttons had been approved by Pelican Homestead.
The final specification of error pertains to the $2,300.00 awarded to the Lockharts for attorney's fees. The Suttons argue there was no evidence on which to base this award. To the contrary, Mrs. Lockhart testified that she incurred $2,300.00 in legal fees in connection with this lawsuit. The purchase agreement specifically provided for attorney's fees in the event of nonperformance of the contract and the $2,300.00 awarded to the Lockharts by the trial court is proper and reasonable.
The Suttons do not claim any error in regard to the specific items or amounts of damages awarded and, accordingly, we do not consider or pass on the propriety of these items and amounts.
The Lockharts answered the appeal seeking an additional $14,500.00 in damages, the difference between the contract price and the price for which the property was sold some thirteen months after the contract was breached, and increased attorney's fees in the amount of $5,000.00 for answering and defending this appeal.
As noted by the trial court the correct measure of damages for breach of a contract to sell, in addition to expenses incurred by reason of the breach, is the difference between the contracted price and the market value of the object of the contract on the date of the breach. Womack v. Sternberg, supra; Eanes v. McKnight, supra. Since the only evidence presented at trial concerning the market value of the house placed the house's value at $76,000.00, the same as the contract price, the Lockharts were not entitled to recover the additional $14,500.00 sought. However, the Lockharts are entitled to additional attorney's fees for services rendered on appeal, which additional amount we fix at $1,000.00.
The judgment of the district court is amended to increase the award for attorney's fees from $2,300.00 to $3,300.00 and, as amended, is affirmed. Costs of the appeal are assessed to the appellants, Charles Sutton and Sandra Price Sutton.
AMENDED AND AFFIRMED AS AMENDED.