583 So.2d 549 (1991)
Jesse VALLOT, Plaintiff-Appellant,
v.
Lester CHAMPAGNE, Defendant-Appellee.
No. 90-155.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1991.
Writ Denied November 1, 1991.
*550 Perret, Doise, Daigle, Longman, Russo & Zaunbrecher, Ian MacDonald, Lafayette, for plaintiff-appellee.
George Tate, and Theall & Fontana, Anthony Fontana, Jr., Abbeville, for defendant-appellant.
Before GUIDRY, YELVERTON and CULPEPPER[*], JJ.
YELVERTON, Judge.
This is an appeal from a judgment awarding Jesse Vallot damages in the amount of $60,000 for a breach by Lester J. Champagne of an agreement to buy and sell real estate. Champagne appeals devolutively, arguing three assignments of error. We affirm in part, set aside a part of the judgment, and remand with instructions.
The facts which gave rise to this suit are as follows. Vallot built a new supermarket, Jesse's Grocery and Market, and ran it for four years, but it was not successful and it closed. Vallot listed the market with a local realtor. The realtor contacted Champagne, who was already in the grocery business, to see if he was interested.
Champagne viewed the supermarket on several occasions. The first time, the realtor forgot the keys so Champagne viewed it only from the outside. The second time, Champagne got in but the electricity was not on, so he viewed the interior of the store with the available sunlight and flashlights for 20-30 minutes. Champagne was still interested, and so he later viewed the store interior and equipment with full interior electrical lighting. This time he spent a couple of hours looking at the building and equipment with the help of Ricky Louquette, a supermarket manager.
Immediately following the last viewing, Champagne made an offer to purchase the store for $150,000 and executed a buy and sell agreement which was rejected. It was rejected because the mortgagee, the Small Business Administration, would not grant a partial release for that sum. Subsequently, another offer was made by Champagne for $155,000 and a second buy and sell agreement was executed on December 8, 1987. With the approval of the Small Business Administration, Vallot accepted that offer the next day.
Later, Champagne returned and looked at the mechanical equipment, i.e., the refrigeration and air conditioning, in the supermarket in the company of John D. Ritchey, a refrigeration expert. Following this inspection, Champagne gave notice that he was withdrawing his offer to purchase. Vallot filed this suit for specific performance, or in the alternative, damages.
The agreement to buy and sell contained a representation by the seller that the mechanical equipment on the premises was in good operating order and that, following an inspection of the premises by the buyer, should repairs to the equipment be necessary, they would be made at the expense of the seller.
The building itself was only about five years old when the offer to purchase was accepted. The refrigeration and air conditioning equipment, however, was older, having been moved from another store and installed at the time of the completion of the building. A refrigeration expert for Vallot testified that the air conditioning and refrigeration equipment was still in good working order. This expert was the person who installed the equipment and who had maintained it up until about two years before the buy and sell agreement was executed. Other refrigeration experts testified for Champagne, and it was their opinion that the equipment was old and outmoded, and that it required complete replacement.
*551 The problem at trial was, none of the experts who testified ever turned the equipment on. Nobody ever tested it to see if it was working. Among the findings of fact made by the trial court in his reasons for judgment were the following:
The only right not exercised by CHAMPAGNE was the right to demand and have repairs made. CHAMPAGNE did take action, but his action was a withdrawal from the contract completely. This withdrawal is clearly stated in Exhibit P-15/D-2, dated December 22, 1987. This withdrawal was reiterated by CHAMPAGNE in his testimony at the trial, wherein he testified that he intended a complete and unconditional withdrawal. At no time was VALLOT requested to deliver the property nor to make any repairs.
It is to be noted that the testimony of John D. Ritchey and Robert M. Bixemann never contemplated any repairs, but rather a complete redesign of the property and replacement of all refrigeration equipment. In spite of this fact, both witnesses testified that the property could be operated as a store with the present equipment, although not as efficiently as with new equipment. This is not a right reserved in the contract, and CHAMPAGNE made his offer after inspection with no mention of efficiency. These witnesses further testified that their assessment was made without attempting to operate any of this equipment.
Finding that Champagne did not prove that repairs were needed, and did not accord Vallot the contract right to make any needed repairs, but instead unconditionally withdrew from the contract without any justification, the trial court awarded damages in the amount of $60,000.
Champagne's first contention on appeal is that the trial court erred in not finding that the supermarket was defective. He argues that the property was in such a defective condition as to give rise to an error in the thing contracted for, justifying his unconditional withdrawal. He rests his arguments on appeal on the following Civil Code articles:
La.C.C. Art. 1948
Consent may be vitiated by error, fraud, or duress.
La.C.C. Art. 1950
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
The trial court concluded that the condition of the store was not defective, because the testimony showed that the supermarket could be operated as a store with the existing equipment. Although the store might not have run as efficiently with its existing equipment as with brand new equipment, the trial court found Champagne did not have the right under the contract to require the installation of new equipment, at least without showing that the existing equipment would not work and could not be repaired to work. In addition, the trial judge pointed out that Champagne made his offer after he had inspected the equipment, and the offer made no mention of efficiency.
The record clearly supports the trial judge. Champagne viewed and inspected the property several times. He had sufficient time to inspect the equipment before he made an offer. After his second offer was accepted he inspected the premises once more in the company of John D. Ritchey and Robert N. Bixemann, and it was on their advice that he decided to withdraw from the agreement. These two gave him advice, however, without ever turning on the refrigeration or air conditioning equipment to see if it would operate. The testimony supports a finding that this property could function as a supermarket. The property was not in a defective condition so as to create an error which would have justified Champagne's unconditional withdrawal from the purchase and sell agreement.
*552 Champagne's second argument on appeal is that the trial court erred in refusing to allow testimony into evidence which would support his allegation that the store was defective in design. The trial court ruled that any evidence concerning the design of the store was not at issue. This evidence was proffered at the end of trial. We find that the trial court did not err in its ruling.
The agreement to buy and sell stated only that the equipment on the premises would be in good operating order upon delivery. The testimony presented at trial does not indicate that the equipment was not in good operating order.
When Champagne inspected the premises prior to his accepted offer to purchase, the design, as well as the identification and application of the refrigeration and air conditioning equipment, was apparent. The store design and application engineering for the refrigeration and air conditioning (the area of expertise of the expert whose testimony was rejected), was not relevant to any issue before the court, and it was properly excluded.
In his last assignment of error, Champagne argues that even if we affirm the trial court's judgment, there should be no award for damages. One of his arguments is that the cost of repairs necessary to remedy the defects greatly exceeds the difference between the contract price and the appraisals.
The weakness of this argument is that there was proof of neither defect nor cost of repair. Champagne's evidence contemplated the replacement of all refrigeration and air conditioning, without any proof that the existing equipment would not work. Nor was there any proof of what the cost of repair would be if any part or all of the equipment did not work. The contract called only for the existing equipment to be in good operating order.
The trial court's reasons for its award are as follows:
The proper measure of damages is the difference between the contract price of $155,000.00 and the value of the thing at the time of the breach. VALLOT presented no evidence of this value, but CHAMPAGNE did. Mr. Darwin J. Fontenot, testifying on behalf of CHAMPAGNE established the value of the property at $95,000.00 as of January 1, 1987. VALLOT is therefore entitled to receive damages in the amount of $155,000.00 less $95,000.00 or the sum of $60,000.00, together with legal interest thereon from date of judicial demand until paid, and all costs of the proceeding, subject to credit for all sums previously paid. Costs are to include the fees of all experts and costs of depositions.
Although the appellant does not make this argument on appeal, we note from our own evaluation of the record that the trial judge made two errors in calculating damages. The first was in finding that Vallot presented no evidence of value.
Gene Cope, qualified as a real estate appraiser, testified for the plaintiff. He examined the property twice in October 1988, and once again 30 days before the trial. His conclusion as to the current market value of the supermarket was $100,000. Using the sales comparison approach, he looked at 12 separate transactions in the Lafayette marketing area in the six or seven month period prior to trial, and this was the basis for his evaluation. Gene Cope's testimony was given on June 29, 1989, and it is clear that his evaluation was as of that date.
In calculating the damages in this case the trial judge relied on the testimony of Darwin J. Fontenot, an expert real estate appraiser for the defendant. The trial judge concluded that Champagne established the value of the property at $95,000 as of January 1, 1987. In this finding the trial court clearly erred a second time. Fontenot testified on June 30, 1989. He stated that he was retained to look at the property only about a week and a half earlier, and that he had arrived at his opinion as to the property's value just three or four days before he testified at the trial. He stated that his opinion was that the property's current market value was $95,000.
*553 The proper measure of damages, in a case like this, is the difference between the contract price and the market value of the property on the date of the breach. Lockhart v. Sutton, 503 So.2d 1046 (La. App. 2d Cir.1987). The date of the breach in this case was February 1988. This was when Vallot gave notice to Champagne to be present for closing the sale, and Champagne failed to appear. The market value of the property as testified by the experts was, respectively, $100,000 on June 29, 1989, and $95,000 on June 30, 1989. Neither expert gave testimony as to value as of the date of the breach of the contract.
There is no reliable evidence in the present record for us to establish the market value of the property on the date of the breach. There is evidence in the testimony of the two appraisers that there was an ongoing downturn in the economy in the Lafayette area (the supermarket was in nearby Youngsville) in the intervening time. From this we think it probable that the value of this property was less in June 1989, when the case was tried, than it was in February 1988, when the breach occurred. We are mindful of our duty to decide the case, if we fairly can, on appeal, and thereby end it. We have searched this record in vain for some yardstick by which to measure the progress rate of the economic downturn during the intervening sixteen months, in order to calculate value as of the date of the breach. We have found no reliable yardstick.
Accordingly, much as we dislike doing so, we must remand this case with instructions that the trial court conduct a hearing limited to a determination of the market value of this property as of February 1988. The trial court will then calculate damages in accordance with the evidence on remand.
For the foregoing reasons, the judgment declaring that Vallot is entitled to provable damages is affirmed. The judgment fixing the amount of damages is set aside. The case is remanded, pursuant to the above instructions, for the fixing of damages and the rendition of a judgment therefor. The parties will pay the cost of this appeal in equal portions.
AFFIRMED IN PART; JUDGMENT IN PART SET ASIDE; REMANDED WITH INSTRUCTIONS.
NOTES
[*] Judge William A. Culpepper, Retired, Judge Pro Tempore.