# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2024

Lyle W. Cayce
Clerk

———————

No. 23-30566

———————

David Weinhoffer, *as liquidating trustee of* Offshore Specialty Fabricators, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Davie Shoring, Incorporated,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-11175

———————————————————

Before Willett, Wilson, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

This breach of contract case arises from the failure of the highest bidder at auction to pay for the item on which it bid. The seller prevailed on its suit for breach of contract, but it appealed the award of damages. We reversed the award, and on remand, the district court awarded additional damages. The bidder now appeals the judgment and the damages award.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30566

We AFFIRM the judgment in favor of the seller but REVERSE IN PART and RENDER on damages.

I

After Offshore Specialty Fabricators, LLC (the Seller) filed for bankruptcy, David Weinhoffer was appointed as its liquidating trustee (the Trustee). In that capacity, he entered into an agreement (Agreement) with Henderson Auctions to sell a 205-man modular housing unit at an online auction. The Agreement included a provision limiting the remedies for a buyer's breach to either specific performance of the sale or forfeiture of the buyer's deposit, which would be shared equally with the auctioneer. It also provided that

> (1). [SELLER] agrees to pay AUCTIONEERS for the services rendered by AUCTIONEERS a commission of 10% of the gross receipts from all sales of the Property from all sales of the Property made during the effective period of this Auction Agreement . . . . Auctioneer will charge a 10% Buyer Premium to the winning bidder of each lot sold.

The auctioneer's website advertised the sale of the housing module for a few weeks ahead of the auction. The advertisement stated that the winning bid came with three obligations: (1) payment of a 10% Buyer's Premium; (2) removal of the module in one piece within 60 days of the sale; and (3) full settlement on the day of the auction or the following business day. It also specified that the module was sold "as is/where is" and that inspection prior to bidding was available and recommended.

The online auction took place on May 16, 2018. The principal of Davie Shoring, Inc. placed the winning bid of $177,500, but the bidder did not pay for the module. Three weeks later, the Trustee asked the auctioneer about payment, and a representative informed him that the auctioneer still had not collected from the bidder. On June 7, 2018, the representative informed the

2

Trustee that the auctioneer's owner had recently spoken with the bidder and was "pushing for payment."

On July 2, 2018, the auctioneer's representative informed the Trustee that he had not had any contact with the bidder, considered it a "bad bidder," and did not "look for [it] to pay," and he asked whether the Trustee wanted to try again with another auction. The Trustee inquired whether any of the other bidders had been contacted about purchasing the module, and the representative responded that he had sent an email "but didn't push it in hopes of collecting from" the bidder. Over a month later, the Trustee emailed the representative and advised that he would "make the property available for removal of the module if [the bidder] remain[ed] interested." On August 24, 2018, the Trustee followed up, but the representative had not heard from the bidder.

On December 5, 2018, the Trustee transferred ownership of the module at no cost to the Seller's affiliate, which sold it at auction a month later for $6,000.

On June 12, 2019, the Trustee sued the bidder for payment of the bid. At a bench trial, the bidder argued that it had not entered into a contract with the Trustee, and it asserted several affirmative defenses. The court found that the parties had formed a valid contract, the terms of which were set forth in the bidder's Exhibit 41. Exhibit 41 consisted of a screenshot of the auction terms displayed on "Proxibid," a third-party website linked on the auctioneer's website, as well as an archived webpage from the "Wayback Machine."[1] It included a liquidated damages provision that limited any

---

[1] "The Wayback Machine is an online digital archive of web pages. It is run by the Internet Archive, a nonprofit library in San Francisco, California." *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 581 n.1 (5th Cir. 2022) (quoting *Mojave Desert Holdings, LLC v. Crocs, Inc.*, 844 F. App'x 343, 346 n.2 (Fed. Cir. 2021)).

recovery to 20% of the bid price or a $500 minimum. Relying on Exhibit 41, the district court entered judgment for the Trustee and awarded him $35,500, 20% of the $177,500 bid price plus interest.

The Trustee appealed the damages award. We reversed, finding that Exhibit 41 had been improperly admitted under Federal Rules of Evidence 901 and 803, and that the district court had erred by taking judicial notice of its contents and limiting recovery to 20% of the bid price. *See Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579 (5th Cir. 2022).

On remand, the case was re-tried on the existing record with post-trial briefing, as agreed by the parties. The district court again found that the parties had formed a valid contract, which the bidder had breached. It also found that the Trustee had failed to mitigate damages by not attempting to resell the module and transferring it to its affiliate at no cost. It awarded the Trustee the $177,500 bid price, plus $17,750 (the 10% Buyer's Premium), minus $6,000 for failure to mitigate damages, for a total of $189,250. The bidder then moved for a new trial seeking recalculation of damages, and the district court denied the motion.

On appeal, the bidder argues that the district court erred in finding that the Agreement does not limit the available remedies for nonpayment. Second, it argues that other than the Agreement, the parties never formed an enforceable contract. Third, it challenges the district court's calculation of damages.[2]

---

[2] The Trustee argues that the bidder waived the arguments it raised in this appeal concerning formation of a contract because it failed to challenge the first judgment in the Trustee's favor. Because the bidder's contract formation arguments fail on the merits, we pretermit discussion of the waiver issue.

## II

We review a district court's findings of fact after a bench trial for clear error and its legal conclusions *de novo*. *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 232–33 (5th Cir. 2022). "Factual findings made during a bench trial deserve 'great deference.'" *Id.* at 233 (citation omitted). A fact finder's choice between two permissible views of the evidence cannot be clearly erroneous. *Id.* "When reviewing mixed questions of law and fact, this court reverses only if the findings are based on a clearly erroneous view of the facts or a misunderstanding of the law." *U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 441 (5th Cir. 2021) (quoting *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 381 (5th Cir. 2013)).

## A

The bidder argues that the Trustee is bound by the Agreement, which expressly limits the Seller's remedies to specific performance or retention of the bidder's deposit. It claims that the Seller is not entitled to damages because the Trustee rendered specific performance impossible by transferring the module at no cost and because the auctioneer did not require a deposit to enter the auction.

Under Louisiana law,[3] a written contract is not binding on a party unless it is a signatory to it. *Key Off. Equip., Inc. v. Zachary Cmty. Sch. Bd.*,

---

[3] "[A] federal court sitting in diversity applies the choice of law rules of the forum." *Otteman v. Knights of Columbus*, 36 F.4th 600, 605 (5th Cir. 2022) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003)). Article 3540 of the Louisiana Civil Code allows contracts to be governed by the law expressly chosen or relied upon by the parties unless their choice of laws contravenes public policy or conflicts with Article 3537 of the Louisiana Civil Code, which provides the general rule that a contract is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. The parties rely exclusively on Louisiana law, and the facts that gave rise to this contract dispute took place in Louisiana.

2015-1412, p. 7 (La. App. 1 Cir. 4/15/16), 195 So. 3d 54, 59–60 ("Unless required by law, the contract need not be in writing; however, to be bound by a written document, the party must be a signatory to the document."); *see also B-G & G Invs. VI, LLC v. Thibaut HG Corp.*, 2008-0093, p. 6 (La. App. 4 Cir. 5/21/08), 985 So. 2d 837, 842 ("With regard to a breach of contract, it is obvious that an individual cannot be liable for breach of a contract to which he is not a party.").

It is undisputed that the bidder was not a party to the Agreement between the Trustee and the auctioneer. As a non-signatory, the bidder must prove it was an intended third-party beneficiary to derive any benefit from the Agreement, such as a limitation of remedies against it. *See Guidry v. Hedburg*, 98-228, p. 12 (La. App. 3 Cir. 11/4/98), 722 So. 2d 1036, 1041 ("[A] third-party beneficiary acquires rights with respect to the benefit conferred including the right to demand performance from the promisor."). The bidder did not argue that it was a third-party beneficiary of the Agreement. The district court found that the bidder, as a non-party, could not invoke the Agreement's language to limit the Trustee's remedies against it. We agree.

B

Next, the bidder contends that if it is not bound by the Agreement, the Trustee's breach of contract claim fails because the parties did not form any other enforceable contract. It specifically argues there was no "meeting of the minds," and that the district court "erroneously cherry-picked snippets of testimony" to find assent by its principal and determine the contract's terms and conditions.

The existence of a contract is a question of fact, not to be disturbed unless clearly wrong. *Powers v. United States*, 783 F.3d 570, 578 (5th Cir. 2015) (citing *Matherne v. Barnum*, 2011–0827, p. 6 (La. App. 1 Cir. 3/19/12), 94 So. 3d 782, 787). Under Louisiana law, the sale of an item to the highest bidder

at auction creates a contract of sale governed by ordinary contract rules. La. Stat. Ann. § 9:3157–3158. "A binding contract requires consent of the parties, established through offer and acceptance, and a meeting of the minds." *Landix v. Blunt*, 2012-1231, p. 5 (La. App. 4 Cir. 3/20/13), 112 So. 3d 376, 379; *see also* La. Civ. Code Ann. art. 2439 ("The thing, the price, and the consent of the parties are requirements for the perfection of a sale."). A party who knows the essential terms of a contract cannot claim there was no meeting of the minds. *Lagraize v. Basler*, 20-39, p. 13 (La. App. 5 Cir. 9/9/20), 304 So. 3d 102, 112 (citing *Chaisson v. Chaisson*, 29,243, p. 4 (La. App. 2 Cir. 2/26/97), 690 So. 2d 899, 901).

Before trial, the parties jointly stipulated that a winning bid included obligations to pay a 10% Buyer's Premium and remove the module from its location within 60 days of purchase, and that the module was sold "As is, where is." "A stipulation has the effect of a judicial admission . . . which binds all parties and the court." *Cain v. Aquarius Builders, Inc.*, 96-66, p. 11 (La. App. 5 Cir. 7/30/96), 680 So. 2d 69, 75; *see also* La. Civ. Code Ann. art. 1853. The bidder's principal testified that he was aware of these terms before placing his bid. These were the same terms the district court found to constitute a contract between the bidder and the auctioneer, in its role as agent for the Seller. The record supports the district court's findings that the bidder was aware of the essential terms of the contract for the sale of the module before entering into it, and an enforceable contract was formed. We find no error.

## C

Lastly, the bidder argues that the district court miscalculated damages in four ways: (1) it relied on the wrong rule to calculate damages; (2) it improperly awarded the Trustee a 10% Buyer's Premium; (3) it failed to deduct a 10% commission the Trustee would have paid the auctioneer; and

(4) it erroneously reduced the award by only $6,000 for the Trustee's failure to mitigate damages.

An award of damages for a breach of contract is reviewed for an abuse of discretion. *Mathes Brierre Architects v. Karlton/ISG Enters., LLC*, 2019-0357, p. 9 (La. App. 4 Cir. 12/3/20), 311 So. 3d 532, 539 (citing *Phillips v. Doucette & Associated Contractors, Inc.*, 17-93, p. 5 (La. App. 5 Cir. 10/25/17), 229 So. 3d 667, 672). "The question is . . . whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from that evidence; the fact that the evidence might also support a greater or smaller award does not justify a change in amount by the appellate court." *Audubon Orthopedic & Sports Med., APMC v. Lafayette Ins. Co.*, 2009-0007, p. 25 (La. App. 4 Cir. 4/21/10), 38 So. 3d 963, 980 (citing *Bitoun v. Landry*, 302 So. 2d 278, 279 (La. 1974)).

1

First, the bidder argues that the appropriate measure of damages is the difference between the contract price and the fair market value of the module on the date of the breach, which the Trustee failed to prove. It relies on *Lockhart v. Sutton*, 503 So. 2d 1046 (La. App. 2d Cir. 1987), in which a buyer breached a contract to purchase a home. *Id.* at 1049. The house was later sold for less than the original contract price. *Id.* The court held that the measure of damages for breach of a sale contract for a home was the difference between the contract price and the market value of the home on the date of the breach. *Id.*

In Louisiana, "[t]he sources of law are legislation and custom." LA. CIV. CODE ANN. art. 1. "[U]nder Louisiana's Civil Law tradition, courts look first and foremost to statutory law." *Chevron USA, Inc. v. Vermilion Par. Sch. Bd.*, 377 F.3d 459, 461–62 (5th Cir. 2004). Article 1995 of the Louisiana Civil Code provides that "[d]amages are measured by the loss sustained by

the obligee and the profit of which he was deprived." *See also* LA. CIV. CODE ANN. art. 2555 ("[In a contract of sale], a buyer who . . . fails to pay the price [for the thing] is liable for expenses incurred by the seller in preservation of the thing and for other damages sustained by the seller."); LA. CIV. CODE ANN. art. 2555, Revision Comment (c) ("Other damages" refers to the general rules of damages contained in LA. CIV. CODE ANN. art. 1989 et seq.). Because of Louisiana's Civil Law tradition, we rely on Article 1995 for the measure of damages. Moreover, *Lockhart* is distinguishable because it involved a contract for the sale of a house, not a movable module sold at auction. *See Lockhart*, 503 So. 2d at 1049. The Trustee provided evidence of the loss sustained by the Seller and the profit of which it was deprived. The district court did not abuse its discretion in selecting the measure of damages.

2

The bidder next argues the district court improperly awarded a 10% Buyer's Premium to which the Trustee was not entitled.

For a breach of contract, the measure of damages is the sum that will place a plaintiff in the same position as if the obligation had been fulfilled. *See In re Bankston*, 749 F.3d 399, 403 (5th Cir. 2014) ("Louisiana has embraced the contract damages principle of 'expectation' damages. Under this principle, the general purpose of contract damages is not to punish breaching parties or enrich non-breaching parties, but rather to produce the same result as would have occurred if there was no breach.") (citations omitted). A court must ensure that a plaintiff is not put in a better position than he would have been had the contract been performed. *Id.* (citing *Barnco Int'l, Inc. v. Arkla, Inc.*, 28-157, p. 12 (La. App. 2 Cir. 11/15/96), 684 So. 2d 986, 999–1000).

In relevant part, the Agreement provides that the "Auctioneer [would] charge a 10% Buyer Premium to the winning bidder of each lot sold."

The module's advertisement also expressly stated that the auctioneer would charge the *winning bidder* a 10% Buyer's Premium. Moreover, the Agreement indicates that the winning bidder would make all checks payable to the auctioneer, which would then pay the Trustee his "portion" of the proceeds. The record does not support a finding that the Trustee was ever entitled to the 10% Buyer's Premium, so the Trustee cannot recover the Buyer's Premium on the auctioneer's behalf. Because it put the Trustee in a better position than he would have been had the contract been performed, the district court erred by awarding the Trustee the 10% Buyer's Premium. We therefore reverse the award of the 10% Buyer's Premium.

3

Third, the bidder argues that the district court erred by failing to deduct from the award an additional 10% commission the Trustee owed to the auctioneer. It contends that per the terms of the Agreement, had it fulfilled its obligation under the contract, the Trustee would have received the bid amount of $177,500 *minus* a 10% commission, for a total of $159,750.

In relevant part, the Agreement provides that, "[SELLER] agrees to pay AUCTIONEERS for the services rendered by AUCTIONEERS a commission of 10% of the *gross receipts* from all sales of the Property made during the effective period of this Auction Agreement."

The district court rejected the bidder's argument that the award should be reduced by an additional 10%, reasoning that "the natural reading of the Agreement is that the [B]uyer's [P]remium and the seller's commission are, in effect, one and the same such that the ten percent [B]uyer's [P]remium is paid as the ten percent seller's commission as part of the 'gross receipts' of the auction to [the auctioneer]." The district court interpreted this provision to mean the Trustee would pay the auctioneer 10% of the total sum received by the auctioneer, or 10% of $195,250 (the bid award

plus the $17,750 Buyer's Premium). If the sale had gone through as planned, the Trustee would have received $175,725, or $195,250 minus $19,520 (10% of the auctioneer's gross receipts).

"The words of a contract must be given their generally prevailing meaning." LA. CIV. CODE ANN. art. 2047. "Gross" means "overall total exclusive of deductions." *Gross*, MERRIAM-WEBSTER DICTIONARY, https://perma.cc/LPS6-Y48H (last visited Mar. 6, 2024). Because the Agreement does not limit the term "gross receipts" to the Seller's gross receipts, as the bidder contends, the district court's reading of this provision is not unreasonable. The district court did not abuse its discretion by not deducting an additional 10% from the award. It did err, however, by awarding the full bid amount of $177,500 instead of the $175,725 the Trustee would have received if the sale had occurred. *See In re Bankston*, 749 F.3d at 403.

4

Finally, the bidder argues the district court erred by reducing the award by only $6,000 due to the Trustee's failure to mitigate damages. Citing *Electrodata Manufacturing Corp. v. Domed Stadium Hotel, Inc.*, 362 So. 2d 1122 (La. App. 4 Cir. 1978), it argues the court should have declined to award damages entirely or deducted the value of the second- or third-highest bid from the award to more accurately represent the fair market value of the module at the time of the breach.

An injured party has a duty to mitigate his damages. LA. CIV. CODE ANN. art. 2002. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced. *Id.* "The scope of the duty to mitigate depends on the facts of the individual case, and a party is not required to take actions which would likely prove unduly costly or futile. The duty is what a 'reasonably prudent man' would do in similar circumstances." *Redstone v. Sipes*, 53,416, p. 9 (La. App. 2 Cir. 4/22/20), 294 So. 3d 1113, 1119

(citations omitted). The clear error standard demands great deference to the trial court's findings when the findings are based on determinations regarding the credibility of witnesses. *Id.*

In *Electrodata Manufacturing*, a hotel purchased a room status system. 362 So. 2d at 1123. Under the sales contract, the vendor was to supply and install the system, and the hotel owner was to have the building wired for installation. *Id.* at 1124. The vendor requested several written assurances that the building was ready for installation but received none. *Id.* at 1126. Concluding the hotel was not going to pay for the system, the vendor sold it to a different hotel as "junk" for $400 and then sued the contracting hotel for damages. *Id.* The court held that where a seller claims a buyer breached a contract of sale but sells the object at an unreasonable price, it may not recover damages. *Id.* at 1126–27.

Here, the district court distinguished *Electrodata Manufacturing*, finding that the affiliate's sale of the module was not a junk sale because a seller at auction has limited control over the actions of bidders. This ignores the fact that the Trustee gave away the module away at no cost, however. Nevertheless, under Article 2002 of the Louisiana Civil Code, a party is not required to sell an item to recover damages; it must make "reasonable efforts" to mitigate damages. The burden is on the obligor to demand that damages be reduced accordingly. LA. CIV. CODE ANN. art. 2002. *See also Chouest v. Chouest*, 2018-1484, p. 25 (La. App. 1 Cir. 12/19/19), 292 So. 3d 68, 87 ("[T]he failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense.").

The Trustee testified about his failure to attempt to resell the module and decision to transfer it to the affiliate during the bench trial. In its post-remand findings, the district court acknowledged that the Trustee did not attempt to re-auction the module and gave it away at no cost and considered

the unique circumstances imposed by the bankruptcy proceedings. Still, it reduced the award by only $6,000. It found that if the Trustee had sold the module instead of transferring it to the affiliate, $6,000 was the closest datapoint to its fair market value on December 5, 2018, and any other value would have been "entirely speculative." The bidder provides no support for its assertions that the award should be reduced by the fair market value of the module at the time of the breach or that the next highest bids represent that value. Nor does Article 2002 of the Louisiana Civil Code require it. Based on the evidence and testimony presented, the district court did not abuse its discretion by reducing damages by only $6,000 for the failure to mitigate.

In summary, the district court erred in its damages calculation by awarding the Trustee the 10% Buyer's Premium and by awarding the full bid amount of $177,500 instead of $175,725. Deducting the $6,000 for the Trustee's failure to mitigate damages, the bidder is liable to the Trustee for a total of $169,725.

IV

We AFFIRM the district court's judgment in favor of the seller but REVERSE IN PART the district court's calculation of damages and RENDER an award of $169,725.[4]

---

[4] *See Bailey v. Daniel*, 967 F.2d 178, 181 (5th Cir. 1992) (while errors in calculating costs should ordinarily be addressed in the trial court, if evident from the record, an error may be reversed and rendered on appeal).